UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JOSEPHINE MARAZZO,

Plaintiff,

**MEMORANDUM & ORDER**
24-CV-4967(EK)

-against-

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

Plaintiff Josephine Marazzo challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny plaintiff's cross-motion.

## I. Background

### A. Procedural Background

This case has a long history. In September 2015, Marazzo applied for disability benefits, alleging a disability onset date of July 25, 2011. Administrative Tr. ("Tr.") 1517, 1539, ECF No. 5. After holding a hearing, Administrative Law

[1] Frank Bisignano is the current Commissioner and is thus substituted for former Commissioner Martin O'Malley as the defendant in this suit. Fed. R. Civ. Pro. 25(d); *see* 42 U.S.C. § 405(g).

Judge ("ALJ") Hilton Miller denied her claims. Tr. 34. The agency's Appeals Council affirmed, Tr. 1609, and Marazzo appealed that decision to this Court. Compl., *Marazzo v. Berryhill*, 19-CV-552 (E.D.N.Y. Jan. 1, 2019), ECF No. 1. The district judge granted Marazzo's motion for judgment on the pleadings and remanded to the agency. Order, *Marazzo*, 19-CV-552, ECF No. 23. ALJ Miller held a second hearing and again denied Marazzo's claims. Tr. 1022, 1056. After the Appeals Council affirmed that denial, Tr. 1022, Marazzo appealed to federal court a second time, and this Court remanded pursuant to the parties' joint stipulation. Joint Stip., *Marazzo v. Kijakazi*, 22-CV-4865, ECF No. 11 (E.D.N.Y. Jan. 3, 2023).

The agency then assigned the case to a new ALJ, Marguerite Toland, who held a hearing in June 2023. Tr. 1560. After she too denied Marazzo's claims, Tr. 1539, plaintiff directly sought review of that decision in this Court.[2] Compl. ¶ 1, ECF No. 1. Marazzo seeks disability benefits from July 25, 2011 until December 31, 2017 — the date on which she last met the insurance status requirements. Tr. 1519.

**B. The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined

[2] After the Court remands a case, the ALJ's decision on remand becomes final when — as here — the claimant does not file "written exceptions" with the Appeals Council, and the Appeals Council does not elect to review the ALJ's decision within sixty days. 20 C.F.R. § 404.984(d).

as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Marazzo had not engaged in substantial gainful activity since her alleged onset date. Tr. 1519. The ALJ also determined that Marazzo suffered from the severe impairments of degenerative disc disease of the

cervical and lumbar spine; degenerative joint disease of the left shoulder; right knee sprain; obesity; depressive disorder; and anxiety disorder. *Id.* The ALJ also determined, however, that none of these maladies rose to the level of a Listed Impairment. *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded that Plaintiff had the RFC to perform "light work" with limitations. Tr. 1521. Those limitations included that Marazzo could "stand [or] walk" "no more than 1 hour at a time"; would need to "shift positions for up to 5 minutes per hour"; and "could perform no more than occasional overhead reaching with [her] left . . . upper extremity." Tr. 1521. Further, given plaintiff's anxiety and depression, the ALJ limited Marazzo to "low stress work," which she defined as "work involving simple, routine tasks." Tr. 1522.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Marazzo can not perform her past work as a financial manager

because that job required "semi-skilled" tasks that fall outside Marazzo's RFC for "unskilled work." Tr. 1537, 1572-73. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The ALJ determined that Marazzo could perform certain such jobs, including as a routing clerk and photocopy machine operator. Tr. 1538-39. Given that finding, the ALJ concluded — after a thorough and comprehensive review — that Marazzo was not disabled. *Id.*

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[3]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

**III. Discussion**

Plaintiff raises four arguments on appeal. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl.'s Mem.") 13-24, ECF No. 7. None of these arguments has merit.

**A. The ALJ Properly Applied the Treating Physician Rule**

Plaintiff first argues that the ALJ erred when she assigned only "some weight" to the opinions of Marazzo's four treating physicians. Pl.'s Mem. 14. Plaintiff filed her application in 2015. Because the "treating physician rule" applies to claims filed before March 27, 2017, it applies here. 20 C.F.R. § 404.1527.

The rule requires the ALJ to assign "controlling weight" to the "medical opinion of a claimant's treating physician" if the opinion is "well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). At the same time, the ALJ may reject a treating physician's opinion if it is "contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Before an ALJ declines to give a treating physician's opinion controlling weight, the ALJ must consider certain

factors to determine the weight to give the opinion, including "the length of treatment relationship and frequency of examination," and "the opinion's consistency with the record as a whole." 20 C.F.R. § 404.1527(c). The ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129. An ALJ's failure to consider each of these factors is "procedural error," but the reviewing court will nonetheless affirm if "a searching review" demonstrates that the ALJ comported with the "substance of the treating physician rule." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no . . . slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

1. The ALJ Properly Declined to Give Controlling Weight to the Opinions of Drs. Perez and Stiler

Marazzo argues that the ALJ should have assigned controlling weight to the opinions of rehabilitation specialist Dr. Christopher Perez and neurologist Dr. Igor Stiler. Pl.'s Mem. 13. Both physicians opined that Marazzo could not perform even sedentary work, a more restrictive RFC than light work. Tr. 901 (Dr. Perez); Tr. 764 (Dr. Stiler). The record reveals, however, that ALJ Toland properly declined to give either

opinion controlling weight.

a. Dr. Perez's Medical Opinion

Marazzo first consulted Dr. Perez in July 2011, a few days after she fell on a tile floor at the bank where she worked. Tr. 1524. Dr. Perez treated her from that date through October 2017, primarily for pain in her left shoulder and right knee and tenderness in her cervical spine. *Id.*

In October 2017, Dr. Perez opined that Marazzo could stand or walk "less than 2 hours" in an eight-hour workday, sit "less than 4 hours," and could frequently carry more than five but less than ten pounds. Tr. 901. He also opined that Marazzo could "never reach overhead" with her left upper extremity. *Id.*

A claimant is capable of sedentary work if she can lift ten pounds occasionally, sit for at least six hours, and walk or stand for two hours in an eight-hour workday. *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010); *see* 20 C.F.R. § 404.1567(a). Light work, in contrast, "requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours . . . and sit for up to two hours" per day. *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010); *see* 20 C.F.R. § 404.1567(b).

If credited, Dr. Perez's opinion would preclude sedentary work, as he opined that plaintiff could only sit for four hours instead of the required six hours. It would also

preclude light work: plaintiff could not frequently lift ten pounds, or stand and walk for six hours.

The ALJ determined that Dr. Perez's opinion was entitled to "some" but not "controlling weight." Tr. 1531-32. She credited his assessment of knee and back pain, providing the following accommodations in her RFC determination: Marazzo needed a "sit and stand option"; could "stand/walk for no more than 1 hour at a time"; and after each hour of walking, she would "need to sit or shift position for up to 5 minutes . . . ." Tr. 1521, 1531-32.

But the ALJ declined to credit his opinions about Marazzo's ability to walk, lift, and reach overhead, finding them inconsistent with his own medical notes and the broader record. Tr. 1531-32. Instead, the ALJ concluded that Marazzo could perform light work and occasionally reach overhead with her left upper extremity. Tr. 1521; *see Mancuso*, 361 F. App'x at 178.

***Plaintiff's Ability to Walk.*** The ALJ did not err in discounting Dr. Perez's assessment of plaintiff's walking ability.

*First*, an ALJ may decline to give controlling weight to the opinion of a treating physician if his treatment notes are inconsistent with his opinion. *See Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012). Here, Dr. Perez's treating

notes are inconsistent with his finding that Marazzo could walk no more than 2 hours per day. *See id.* Full strength in an injured knee generally supports the ability to walk the six hours per day that light work requires. *Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 535 n.4 (S.D.N.Y. 2019). Normal balance also supports that ability. *See White v. Berryhill*, 753 F. App'x 80, 81-82 (2d Cir. 2019). Contrary to his assessment of Marazzo's walking limitations, Dr. Perez assessed in August 2012 that her right knee "flexion" and "extension" strength were "5 out of 5," and he observed that she showed "no weakness of the right knee." Tr. 466. He also noted that her "balance was normal." Tr. 467; *see* Tr. 554 (same findings in June 2013). These findings *support* Marazzo's ability to walk at the light-work level. *See Bonilla Mojica*, 397 F. Supp. 3d at 535.

*Second,* other examining physicians made findings that further supported this conclusion. A claimant who walks with a normal gait and has full lower-extremity strength generally can walk at the level that light work requires. *See, e.g., Lisa B. v. Comm'r of Soc. Sec.*, No. 21-CV-702, 2022 WL 6735016, at *6-7 (N.D.N.Y. Oct. 11, 2022). Independent examiner Dr. Stanley Soran assessed plaintiff in October 2011 in connection with a workers' compensation claim. Tr. 819. He observed that she had a "normal gait" and could "walk on her toes and heels without any problems." Tr. 820. And in May 2015, Dr. Stiler observed

"5/5" strength in plaintiff's lower-extremity muscles, including her hamstrings. Tr. 781-82.

*Third,* Marazzo's activities of daily living further supported her ability to walk up to six hours per day. An ALJ may consider a claimant's activities of daily living in assessing her RFC. *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013); 20 C.F.R. § 404.1529(c)(3)(i). Activities such as shopping and preparing meals often support the ability to walk at the light work level. *See, e.g.*, *Hatcher v. Astrue*, 802 F. Supp. 2d 472, 477 (W.D.N.Y. 2011). Plaintiff stated in a standard SSA Function Report in February 2016 that her daily activities included shopping, doing "light laundry," and preparing simple meals. Tr. 279-82, 289. She also reported that, starting in May 2014, she frequently cared for her cousin's baby, which further supports the conclusion that she could walk at the level light work requires. Tr. 837-38; *Hatcher*, 802 F. Supp. 2d at 477.

These findings together provide substantial evidence that Marazzo could perform the walking that light work requires, *Lisa B.*, 2022 WL 6735016, at *6-7, *10, and Marazzo has pointed to no other medical evidence that shows otherwise, as is her burden. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

***Plaintiff's Ability to Lift.*** The ALJ also permissibly

rejected Dr. Perez's opinion that Marazzo could not frequently lift ten pounds. His treatment notes contradict that opinion, while other substantial evidence supports her ability to perform such lifting. *See Micheli*, 501 F. App'x at 28.

A finding of "full strength" in the upper extremities ordinarily supports the lifting required by light work. *E.g.*, *Montaque v. Astrue*, No. 07-CV-749, 2010 WL 1186515, at *13-14 (N.D.N.Y. Mar. 23, 2010); *Smith v. Colvin*, No. 14-CV-1752, 2016 WL 11372344, at *3 (D. Conn. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL 1170910 (D. Conn. Mar. 23, 2016). Here, Dr. Perez's treatment notes assess "5/5" left shoulder strength in September 2011, Tr. 372, and "4.5/5" in October 2014. Tr. 653. And his notes from October 2017, the same month he offered his opinion, state that plaintiff's left shoulder "flexion strength" and "extension strength" were "5/5." Tr. 908.

Moreover, Dr. Perez documented improvement throughout this period. His notes from a September 2012 appointment state that Marazzo was "making progress" and "feeling well" following acupuncture treatment. Tr. 480. At an October 2012 appointment, Dr. Perez observed that plaintiff's low back pain was "much better" after Calmare treatment, a technique that uses electrical nerve stimulation to treat pain. Tr. 650. Evidence of improvement in a relevant function is often pertinent to

assigning an RFC, *Cassandra G. v. Comm'r of Soc. Sec.*, 626 F. Supp. 3d 553, 571 (N.D.N.Y. 2022), and the ALJ permissibly pointed to it here in her comprehensive analysis. Tr. 1530-33.

The findings of other examining physicians further support the ALJ's determination. As noted, full strength and complete range of motion in the shoulder generally supports the lifting that light work requires. *E.g.*, *Michael R. v. Comm'r of Soc. Sec.*, No. 19-CV-6836, 2021 WL 346365, at *6 (W.D.N.Y. Feb. 2, 2021). Dr. Steven Zaretsky, an independent medical examiner, assessed plaintiff in September 2012 in connection with a workers' compensation claim. Tr. 813, 1526. He found "no atrophy" in her shoulder muscles. Tr. 816. At a June 2014 appointment, orthopedist Dr. Armin Tehrany similarly assessed that Marazzo could move her left shoulder normally in every direction. Tr. 545. And at a September 2014 appointment, Dr. Igor Rubinshteyn observed that plaintiff's left shoulder showed "no atrophy," exhibited mostly normal "range of motion," and had only slight weakness when Marazzo lifted her arm to the side. Tr. 888.

Taken together, these medical findings provide substantial evidence that Marazzo could perform the lifting light work requires. *See Michael R.*, 2021 WL 346365, at *6. And Marazzo has pointed to no other medical evidence showing otherwise, as is her burden. *Smith*, 740 F. App'x at 726.

***Plaintiff's Ability to Reach Overhead.*** The ALJ also permissibly declined to adopt Dr. Perez's opinion that Marazzo could "never reach overhead" with her left arm, instead limiting her to "occasional" overhead reaching. Tr. 1521.

Findings of normal range of motion and no atrophy or instability in the shoulder tend to support the ability to perform occasional overhead reaching. *Diaz v. Kijakazi*, No. 20-CV-10346, 2022 WL 4352470, at *12 (S.D.N.Y. Sept. 20, 2022). Dr. Perez's treatment notes from October 2017, the same month he opined Marazzo could never reach overhead, record full flexion and extension strength in her left shoulder. Tr. 908. Other examining physicians recorded findings that further support overhead reaching. Dr. Soran assessed at an October 2011 appointment that Marazzo's left shoulder exhibited normal range of motion and showed "no instability." Tr. 821. And Dr. Rubinshteyn's September 2014 notes state that her left shoulder had "no atrophy." Tr. 888; *see Diaz*, 2022 WL 4352470, at *12.

Ultimately, in declining to give controlling weight to Dr. Perez's opinion, the ALJ set forth comprehensive reasons. She considered Dr. Perez's treatment notes, but identified inconsistencies between his opinion, his own findings, and other substantial medical evidence. Tr. 1531-32; *see Burgess*, 537 F.3d at 129. She also considered the requisite factors, pointing to the length and nature of the treating relationship,

among other things. 20 C.F.R. § 404.1527(c). The ALJ thus did not err in discrediting Dr. Perez's opinion of Marazzo's ability to walk, lift, and reach. *Veino*, 312 F.3d at 588; *see Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017).

b. Dr. Stiler's Medical Opinion

Dr. Stiler treated Marazzo for left shoulder pain and cervical spine pain between January 2014 and October 2017. Tr. 760-65, 880-84.

Dr. Stiler opined in October 2017 that Marazzo could stand or walk for "less than 1 hour" per day, could sit "less than 4 hours," and could "frequently" carry "less than 5 pounds." Tr. 880. He also opined that Marazzo could "never reach overhead" with her left upper extremity. *Id.* Crediting Dr. Stiler's opinion would (again) preclude even sedentary work. For substantially the same reasons that applied to Dr. Perez, however, the ALJ permissibly rejected Dr. Stiler's opinion.

*First*, his own treatment notes do not support that opinion. His notes from a May 2015 appointment state that Marazzo had full strength in all her muscle groups, including "5/5" strength in her biceps, deltoids, and hamstrings, among other muscles. Tr. 781-82, 1525. Full strength in these muscle groups of course supports the ability to both lift and walk as light work requires. *E.g.*, *Kevin F. v. Comm'r of Soc. Sec.*, No. 18-CV-1454, 2020 WL 247323, at *11 (N.D.N.Y. Jan. 16, 2020).

That finding, together with the improvements in Marazzo's upper- and lower-extremity strength that Dr. Stiler observed in February 2016, Tr. 760-95, is inconsistent with his opinion that she could not lift or walk at the level that light work requires.

*Second*, Dr. Stiler's finding of full deltoid strength is inconsistent with his opinion that Marazzo could "never reach overhead" with her left extremity. Tr. 781-82. As noted above, Dr. Soran assessed that Marazzo exhibited "no atrophy or instability" in her left shoulder, Tr. 821, while Dr. Tehrany found a "full" "range of motion" in that shoulder. Tr. 545. Those findings provide substantial evidence that Marazzo could perform the occasional overhead reaching that the assigned RFC contemplates. *See Diaz*, 2022 WL 4352470, at *12.

Finally, the ALJ cited the same substantial evidence she relied on to reject Dr. Perez's opinion, including assessments by Dr. Zaretsky, Dr. Rubinshteyn, and Dr. Soran — all of whom made findings consistent with performing light work, as noted above. As with Dr. Perez's opinion, the ALJ acknowledged Dr. Stiler's relationship with plaintiff and comprehensively explained why his opinion was inconsistent with his own notes and the broader record. Tr. 1532; *see Burgess*, 537 F.3d at 129. Accordingly, the ALJ did not err in declining

to assign Dr. Stiler's opinion controlling weight. *See Monroe*, 676 F. App'x at 8-9.

2. The ALJ Properly Assigned "Some Weight" to the <u>Medical Opinions of Drs. Conciatori and Reich</u>

Marazzo next argues that the ALJ erred by assigning only "some weight" to the opinions of psychiatrist Dr. Anthony Conciatori and psychologist Dr. Ilana Reich. Pl.'s Mem. 13, 20. Both providers treated Marazzo for anxiety, panic disorder, and depression. Tr. 1528-29. And both opined that Marazzo's mental impairments, including her difficulties interacting with others, made her "incapable of performing any work." Tr. 1533-34. The ALJ properly declined to give controlling weight to their opinions, which were inconsistent with their own treatment notes and other substantial evidence. *See Micheli*, 501 F. App'x at 28.

a. Dr. Conciatori's Medical Opinion

Dr. Conciatori treated Marazzo between September 2013 and September 2017 for panic disorder and depressive disorder. Tr. 825-59.

In September 2017, he completed a standard SSA form entitled "Medical Source Statement of Ability to Do Work-Related Activities." Tr. 828-29. He opined that Marazzo had "marked to extreme" limitations in her ability to "understand and remember" instructions, citing her "decreased capacity for concentration." *Id.* He further opined that she had "marked" limitations in her

"ability to interact with others," citing the "frequency of panic attacks." *Id.* He also identified limits in her ability to concentrate, but did not specify a degree. *Id.* Finally, he identified "marked" limits in her ability to adapt and "respond appropriately to usual work situations." Tr. 829. He opined that her impairments in these functions would make it "extremely difficult" to adapt to a work-setting, and concluded that she could not perform any work. *See id.*

If credited, Dr. Conciatori's opinion would establish a listed impairment, and Marazzo would be disabled at step three. Tr. 1520, 1533; *see Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Under Listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders), a claimant satisfies the Paragraph B criteria if she has an "extreme" limitation in one, or "marked" limitation in two, of the four areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).[4] A marked limitation means that the claimant's functioning in the area is "seriously limited"; a moderate

[4] A claimant must also satisfy the Paragraph A criteria, which the parties do not dispute here. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A), 12.06(A); *see* Def.'s Mem. in Supp. of Mot. for J. on the Pleadings 16-17, ECF No. 12-1.

limitation means such functioning is "fair." *Id.* § 12.00(F)(2)(c)-(d).

The ALJ assigned Dr. Conciatori's opinion "some weight." Tr. 1533. She concluded that, in light of Marazzo's anxiety and depression, Marazzo should be limited to low-stress, unskilled work. Tr. 1530-33. However, she also found that Marazzo had only mild limitations in understanding and remembering, and interacting with others; moderate limitations in concentrating and adapting; and ultimately would be able to adapt to a low-stress work environment. *See* Tr. 1520-21, 1533. For the reasons discussed below, the ALJ permissibly declined to give controlling weight to Dr. Conciatori's opinion and cited substantial evidence in support of her determination.

***Plaintiff's Ability to Understand and Remember.*** Dr. Conciatori's assessment that Marazzo had "marked to extreme limitations" in this function conflicts with his own treatment notes and other substantial medical evidence. Tr. 1533.

Findings of clear speech, coupled with coherent thought processes and normal memory performance, are inconsistent with a marked impairment in the ability to understand and remember. *See Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *11-12 (W.D.N.Y. June 26, 2019), *aff'd sub nom. Grega v. Saul*, 816 F. App'x 580 (2d Cir. 2020). At an October 2013 appointment, Dr. Conciatori noted that Marazzo

could engage in "spontaneous" and "fluent" speech, and that her "insight" and "judgment" were "good." Tr. 831. He repeated that assessment, verbatim, at subsequent visits. *E.g.*, Tr. 833-34 (November 2013); Tr. 844-45 (February 2015); Tr. 848 (August 2015); Tr. 851 (March 2016). And at a January 2016 assessment, he observed that Marazzo had "intact" memory. Tr. 757. His notes do not explain, however, why he assessed "marked to extreme" memory limitations in his September 2017 opinion despite finding "intact" memory in January the prior year. Tr. 756-59, 828-30.

The February 2016 assessment of consultative examiner Dr. David Lefkowitz provides further medical evidence that Marazzo has only mild limitations in understanding and remembering. Tr. 1520; *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (opinion of consultative examiner "may constitute evidence" that refutes a treating physician's opinion). Normal object and digit recall are consistent with only a mild impairment in this function. *Petell v. Comm'r of Soc. Sec.*, No. 12-CV-1596, 2014 WL 1123477, at *9 (N.D.N.Y. Mar. 21, 2014). In February 2016, Dr. Lefkowitz found that Marazzo had an "auditory digit span of 3 forward and reversal of 3," could recall "3 objects in 5 minutes," and that her "overall calculations were excellent." Tr. 799. Such findings are consistent with only a mild impairment in Marazzo's ability to

understand and remember. *E.g.*, *Shawn B. v. Comm'r of Soc. Sec.*, No. 18-CV-1371, 2020 WL 1322533, at *3 (N.D.N.Y. Mar. 20, 2020).

***Plaintiff's Ability to Interact with Others.*** For similar reasons, the ALJ did not err in rejecting Dr. Conciatori's opinion of a "marked" limitation in this function.

Dr. Conciatori's treatment notes are inconsistent with the "marked" limitation he assessed. He observed at an October 2017 appointment that plaintiff was "well-groomed"; maintained "good eye contact"; and spoke in a manner that was "spontaneous," "fluent," and of a "normal" "rate and rhythm." Tr. 1272. He also observed that her "[i]mpulse control is good." *Id.* These observations undermine a "marked" limitation in this area and align with only a mild one. *Nurdan S. v. Comm'r of Soc. Sec.*, No. 25-CV-06064, 2026 WL 1780561, at *10 (W.D.N.Y. June 22, 2026). Plaintiff's mood also improved with medication, Tr. 857, which further supports the finding of only a mild limitation. *See Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394, 2019 WL 3369255, at *5 (W.D.N.Y. July 26, 2019).

Other medical evidence also supported the ALJ's conclusion that plaintiff had only mild limitations in this area. Treating psychologist Dr. Reich noted in January 2016 that Marazzo exhibited an "appropriate affect" and had only "some difficulty" establishing "rapport." Tr. 754. An appropriate affect is one indication of a claimant's ability to

interact with others. *Nurdan S.*, 2026 WL 1780561, at *10. Likewise, Dr. Lefkowitz observed at his March 2016 examination that Marazzo had an appropriate demeanor, responded to questions with "coherent speech" and "logical thought," and was able to maintain eye contact. Tr. 799. The ALJ therefore did not err in declining to credit Dr. Conciatori's contrary opinion. *See Micheli*, 501 F. App'x at 28.

***Plaintiff's Ability to Concentrate.*** Dr. Conciatori assessed that Marazzo was "limited" in her ability to concentrate, but provided no further details. Tr. 829. The ALJ found his opinion entitled to "some weight," and concluded that her limitations in concentrating were "moderate." Tr. 1530. On this issue, then, the ALJ and Dr. Conciatori generally aligned: both observed a limitation in Marazzo's capacity to concentrate.

Substantial evidence supports the ALJ's conclusion that Marazzo has a moderate limitation in this function. The ability to follow instructions, coupled with findings of "good concentration" in a psychological assessment, supports a finding of only moderate limitations in the ability to concentrate. *See Cruz v. Colvin*, No. 13-CV-1267, 2014 WL 4384129, at *16 (S.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, 2014 WL 5089580 (S.D.N.Y. Sept. 25, 2014). Here, the ALJ cited Marazzo's self-assessment, in which she stated that she is "able to follow written instructions." Tr. 285. And Dr. Lefkowitz

assessed at a February 2016 exam that "her concentration was good" and she exhibited "logical and goal directed" "thought processes." Tr. 799.

***Plaintiff's Ability to Adapt and Respond to Work Situations***. Finally, Dr. Conciatori opined that Marazzo had a "marked" limitation in her ability to adapt and respond to work situations. Tr. 829. The ALJ again assigned that opinion only "some weight," and concluded that she had instead a "moderate" restriction in this regard. Tr. 1533.

Dr. Conciatori's assessment of "marked" limitations in this function was also inconsistent with his notes. He observed at two assessments in 2017 that Marazzo exhibited "normal psychomotor" abilities, had a "congruent" "mood," and displayed "good" judgment. Tr. 1272 (October 2017); *see* Tr. 1273 (same assessment at November 2017 appointment). Those findings are inconsistent with a marked limitation in the ability to adapt and respond to work situations, and instead consistent with moderate limitations. *See Robles v. Colvin*, No. 16-CV-1557, 2019 WL 7790854, at *14 (S.D.N.Y. Apr. 9, 2019), *report and recommendation adopted*, 2020 WL 882132 (S.D.N.Y. Feb. 24, 2020)

Substantial additional medical evidence supports the ALJ's findings. Activities of daily living are one indicator of the ability to adapt and respond to work situations. *Bonilla v. Comm'r of Soc. Sec.*, No. 20-CV-8216, 2022 WL 2193435, at *5

(S.D.N.Y. May 19, 2022), *report and recommendation adopted*, No. 20-CV-8216, 2022 WL 2193289 (S.D.N.Y. June 17, 2022). Marazzo stated in her February 2016 function report that she "prepare[s] . . . small meals a few days a week"; "shop[s] for a short time"; can do "light laundry" and "pay bills"; and is able to "drive . . . a short distance." Tr. 279-82, 289. Such activities generally support the ability to adapt and manage oneself, further undermining Dr. Conciatori's assessment of marked restrictions. *See Talavera v. Astrue,* 697 F.3d 145, 153 (2d Cir. 2012).

The ALJ also cited the assessment of Dr. Lefkowitz, who identified "fair" insight and judgment at his March 2016 consultative examination. Tr. 799. Insight and judgment are useful indicators of the ability to adapt oneself and respond to work situations, *Talavera*, 697 F.3d at 150, and the ALJ permissibly relied on Dr. Lefkowitz's assessment here. *See Mongeur*, 722 F.2d at 1039.

In sum, the ALJ offered comprehensive reasons for the weight she assigned Dr. Conciatori's opinion, identifying its inconsistencies with both his own notes and other substantial record evidence. Tr. 1533; *see Burgess*, 537 F.3d at 129. She considered, among other things, the nature of his relationship with Marazzo and the frequency of their appointments before discrediting his assessment that Marazzo had certain "marked"

limitations. Tr. 1533. Accordingly, the ALJ did not err in declining to credit his assessment of Marazzo's mental limitations. *See Monroe*, 676 F. App'x at 8-9.

b. Dr. Reich's Medical Opinion

Dr. Reich treated Marazzo for anxiety and depression between February 2013 and March 2021. Tr. 753-56, 893-899, 1265-71.

In October 2017, she reported that Marazzo had "severe" "difficulties in maintaining social functioning" and "episodes of deterioration or decompensation"; "moderate" to "severe" difficulties in activities of daily living; and "moderate" restrictions in her ability to concentrate. Tr. 755, 1266-67. In support of these findings, she cited Marazzo's "diminished energy"; "social withdrawal and isolation"; and "depressed mood." Tr. 754. As the ALJ noted, Dr. Reich applied the former "Paragraph B" criteria in this assessment. Tr. 1535; *see* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138 (Sept. 26, 2016) (replacing former Paragraph B criteria as of January 17, 2017). The prior criteria assessed restriction of social functioning; episodes of decompensation; activities of daily living; and ability to maintain concentration. *See id.* Dr. Reich opined that given her limitations, Marazzo was "unable to work" and is "not expected

to improve." Tr. 756.

The ALJ, however, properly concluded that Dr. Reich's assessment was inconsistent with her own treatment notes, and that other substantial evidence further contradicted it. Tr. 1534-35.

***Plaintiff's Social Functioning.*** The ALJ permissibly concluded that Dr. Reich provided insufficient medical support for her opinion that Marazzo had severe limits in social functioning. Tr. 1534-35. Dr. Reich herself observed, in the same report in which she offered her opinion, that Marazzo's anxiety and depression caused "*moderate* impairments in social functioning." Tr. 754 (emphasis added). She also found that Marazzo shows "*some* difficulty in establishing emotional rapport"; her appearance is "appropriate"; she is "well oriented," and her speech is "logical and coherent." *Id.* These findings conflict with the conclusion that she exhibited "severe" restrictions in social functioning and instead indicate only a mild limitation. *See Angelo Michael G. v. Kijakazi*, No. 22-CV-00892, 2023 WL 4763792, at *5 (N.D.N.Y. July 26, 2023).

***Episodes of Deterioration or Decompensation.*** The ALJ also permissibly rejected Dr. Reich's opinion that Marazzo had severe "episodes of deterioration or decompensation." Tr. 1534. Dr. Reich provided no examples of such episodes. Tr. 753-56; *see Torres v. Barnhart*, No. 02-CV-9209, 2007 WL 1810238, at *3

(S.D.N.Y. June 25, 2007) (ALJ may discredit medical opinion that fails to identify specific instances of such episodes). And her notes were inconsistent with this assessment. She observed that Marazzo was "well oriented," and diagnosed her with adjustment disorder with mild anxiety and depressed mood. Tr. 1534. Such a disorder generally does not cause severe episodes of deterioration. *See Brodie v. Comm'r of Soc. Sec.*, No. 19-CV-6968, 2020 WL 5754607, at *2 (S.D.N.Y. Aug. 25, 2020), *report and recommendation adopted sub nom. Brodie v. Saul*, 2020 WL 5775234 (S.D.N.Y. Sept. 28, 2020). Other substantial medical evidence also contradicted that conclusion. In a March 2016 assessment, state agency consultant P. Kennedy-Walsh identified "no[] repeated episodes of decompensation." Tr. 75.

***Activities of Daily Living.*** On this issue, Dr. Reich opined that Marazzo had "moderate" to "severe" restrictions. Tr. 755, 1266. Once again, however, the ALJ properly discounted that opinion. Tr. 1520, 1535.

First, Dr. Reich did not explain the basis for her opinion: she cited no examples of how Marazzo's symptoms impeded her daily activities. And the ALJ is not required to credit an opinion that lacks an explanation. *See Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 421 (S.D.N.Y. 2022).

Second, substantial evidence showed only moderate restrictions. Activities such as preparing meals, shopping, and

laundry are consistent with only a moderate limitation in daily activities. *See, e.g.*, *West v. Berryhill*, 298 F. Supp. 3d 577, 580 (W.D.N.Y. 2018). As discussed above, plaintiff reported preparing small meals, shopping, doing light laundry, paying bills, and driving short distances. Tr. 279-82, 289; *see* Section III.A.2.a, above. Further, the ALJ also pointed to Dr. Lefkowitz's March 2016 assessment that Marazzo exhibited "good" "insight" and "judgment," as well as "fair" "memory and concentration." Tr. 811. These findings are consistent with only moderate restrictions in performing daily activities, *see* *Qui Li Mei v. Astrue*, No. 12-CV-2545, 2013 WL 3708886, at *4 (E.D.N.Y. July 12, 2013), and the ALJ properly relied on them here. *See Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *2 (2d Cir. Nov. 7, 2024). Finally, the ALJ cited state agency consultant Kennedy-Walsh's March 2016 opinion that Marazzo had only "mild" to "moderate" restrictions in daily activities. Tr. 75, 1537. Because Kennedy-Walsh based her assessment on the substantial medical evidence discussed above, the ALJ properly afforded her opinion "great weight." Tr. 1537; *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

***Ability to Concentrate.*** Finally, Dr. Reich assessed "moderate" limitations in Marazzo's ability to concentrate. Tr. 755. The ALJ also found "moderate" restrictions; thus, no gap exists between Dr. Reich's opinion in this respect and the ALJ's

conclusion. And, as shown above, substantial medical evidence supports that finding. *See* Section III.A.2.a.

Ultimately, the ALJ explained why each limitation that Dr. Reich assessed was either unsupported by her own notes or contradicted by other substantial evidence. Tr. 1534-35; *see Burgess*, 537 F.3d at 129. Accordingly, the ALJ did not err in declining to give Dr. Reich's opinion controlling weight.

c. Substantial Evidence Supports the Assigned Mental RFC

Substantial evidence supports the ALJ's finding that Marazzo could perform "low stress work," or "unskilled work involving simple, routine tasks," Tr. 1522; *see Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). An unskilled job requires the abilities "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Petrie v. Astrue*, No. 08-CV-1289, 2010 WL 1063836, at *2 (N.D.N.Y. Mar. 19, 2010), *aff'd*, 412 F. App'x 401 (2d Cir. 2011); *see* Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *4, 5 (S.S.A. 1985).

***Understanding, Remembering, and Carrying out Instructions.*** The ALJ permissibly found only a mild limitation in understanding and remembering instructions. *See* Section III.A.2.a, above. Among other things, Dr. Lefkowitz observed

that Marazzo's numerical calculations were "excellent," Tr. 799, while Dr. Conciatori observed "intact" memory. Tr. 757. And even "moderate" limitations in this function do not preclude unskilled work. *See Zabala*, 595 F.3d at 410.

Similar evidence supports plaintiff's ability to carry out instructions. Marazzo herself reported that she could follow written instructions, Tr. 285, while Dr. Lefkowitz observed that she engaged in "logical and goal-directed" thought processes. Tr. 799. These findings are consistent with the ability to carry out routine tasks. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

***Respond Appropriately to Supervision, Co-Workers and Usual Work Situations.*** This function requires, among other things, the ability to "cooperat[] with others" and "keep[] social interactions free of excessive irritability." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2). Even moderate limitations in this area are consistent with the ability to perform low-stress work. *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012).

Dr. Conciatori recorded that Marazzo's "impulse control is good" at an October 2017 appointment and observed "good" judgment at her visits between 2013 and 2016. Tr. 831, 833-34, 844-51. Other evidence supported her ability to cooperate, including Dr. Lefkowitz's finding that she maintained

appropriate eye contact, had an appropriate demeanor, and coherently answered questions. Tr. 799. And Dr. Reich observed only occasional irritability and found that she had only "some difficulty" in "establishing rapport." Tr. 754. These findings are consistent with the ability to cooperate with colleagues and supervisors in an unskilled job. *See Lefever v. Astrue*, No. 07-CV-622, 2010 WL 3909487, at *6 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 443 F. App'x 608 (2d Cir. 2011).

***Dealing With Changes in a Routine Work Setting.*** Substantial evidence also supports the ALJ's conclusion that plaintiff could adapt to the routine changes of an unskilled work setting. Tr. 1530. Among other things, Marazzo managed tasks that require planning and independent decision-making: she prepared simple meals, shopped, did laundry, and paid bills. Tr. 279-82; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). Moreover, the ALJ afforded "great weight" to state agency consultant Kennedy-Walsh's opinion that Marazzo could "adapt in a low-pressure workplace." Tr. 75, 1537. In making that determination, Kennedy-Walsh cited substantial record evidence, including Marazzo's "intact attention" and progress in therapy. *Id.* The ALJ permissibly relied on that opinion, along with other substantial evidence, in concluding that Marazzo could adapt to routine changes in a low-stress work environment. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016).

**B. The ALJ's Application of Listing 1.15 Was Not Impermissibly Retroactive**

Marazzo next argues that the ALJ should have evaluated her claims under Listing 1.04 — the musculoskeletal listing in effect when ALJ Miller first denied Marazzo's claims in 2018. Pl.'s Mem. 19-20; *see* 20 C.F.R. pt. 404, subpt. P, app. 1. Instead, ALJ Toland applied the criteria in Listing 1.15, which became effective on April 2, 2021 and so was in effect when she issued the March 2024 decision Marazzo now challenges. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78,164 (Dec. 3, 2020); Tr. 1539. Plaintiff argues that, had the ALJ applied Listing 1.04, she would have concluded that plaintiff met the requirements of a Listed impairment and qualified as disabled. Pl.'s Mem. 20.

That argument is unavailing. The Second Circuit has held that the ALJ should apply the "version of the social security regulations and rulings in effect at the time of [her] decision." *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 555 (2d Cir. 2020) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Consistent with that principle, the SSA provided that it would apply the revised musculoskeletal listing to "claims that are pending on or after the effective date." 85 Fed. Reg. at 78,164. Marazzo's claim was pending following remand when Listing 1.15 took effect, so the ALJ

properly applied it.

Nor is applying the current listing impermissibly retroactive. A new rule does not operate retroactively "merely because it is applied in a case arising from conduct antedating" its enactment. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). Instead, the court must determine whether a claimant had a "vested right" prior to the change, and if so, whether the change "takes away or impairs" that right. *Id.*; *see Jones v. O'Malley*, 107 F.4th 489, 493 (5th Cir. 2024). As the Courts of Appeals to consider the question have concluded, a claimant has no vested right to disability benefits while her claim is pending. *Jones*, 107 F.4th at 493 (rejecting same retroactivity challenge as plaintiff brings here, citing analogous holdings from the Sixth and Seventh Circuits). Because plaintiff's claim was pending when Listing 1.15 took effect, she had no "vested right" that the change impaired. *See id.* The ALJ's application of Listing 1.15 was thus not impermissibly retroactive.

**C. The ALJ Properly Discredited Marazzo's Testimony**

Plaintiff next argues that the ALJ "erred in the credibility assessment of plaintiff" because she improperly relied on plaintiff's "daily activities" to discredit Marazzo's testimony of her physical impairments. Pl.'s Mem. 21-22.

At the hearing, Marazzo testified that before December 2017, she could stand for "no more than 10 minutes" and walk for

"about 15 to 20 minutes." Tr. 1567. She also testified that she can "barely get [a gallon of milk] from the fridge to the counter." *Id.* The ALJ concluded that Marazzo's "medically determinable impairments could reasonably be expected to" limit her in certain respects, but that her testimony "concerning the intensity, persistence, and limiting effects" of these impairments was inconsistent with the medical evidence in the record. Tr. 1523.

The ALJ "is not required to accept the claimant's subjective complaints without question," and "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ may discredit a claimant's testimony concerning her abilities if the claimant's daily activities require greater ability than she claims. *See Brooks v. Comm'r of Soc. Sec.*, 207 F. Supp. 3d 361, 368 (S.D.N.Y. 2016).

The ALJ relied on substantial evidence in discrediting Marazzo's subjective complaints. First, Marazzo's reports of daily activities in that same period contradicted her testimony. Marazzo reported that her activities of daily living included shopping, cleaning her house, doing light laundry, and preparing simple meals, as well as helping to care for her cousin's baby. Tr. 279-82, 837-38; *see* Section III.A.1.a, above. These

activities are inconsistent with the testimony that she could walk for no more than fifteen minutes, *Hatcher*, 802 F. Supp. 2d at 477, and Marazzo has pointed to no medical evidence that would compel a different outcome.

Although plaintiff argues that "[her] activities" "cannot possibly be the basis" for the ALJ's decision that plaintiff can perform "substantial gainful employment," Pl.'s Mem. 24, the ALJ did not rely on such activities alone. *See* Tr. 1522. The ALJ instead cited substantial *medical* evidence that contradicts Marazzo's testimony of her limitations. Tr. 1524-27. An ALJ may discredit a claimant's testimony that clinical findings contradict. *See, e.g.*, *Marrero v. Kijakazi*, No. 20-CV-3872, 2021 WL 4198221, at *10 (S.D.N.Y. Sept. 15, 2021).

As discussed above, the record contains evidence from numerous physicians whose findings were consistent with the ability to walk, stand, and lift at the level that light work requires. *See* Section III.A.1 (citing findings of Dr. Soran and Dr. Zaretsky, among others). Their findings — including full strength in plaintiff's shoulders and legs, normal gait, and normal balance — contradict plaintiff's testimony that she could walk for no more than fifteen minutes or barely lift a gallon of milk. The ALJ thus did not err in discrediting Marazzo's testimony.

**D. The ALJ Accounted for the Vocational Expert's Testimony in Assigning an RFC**

Marazzo finally argues that the ALJ erred when she "failed to address the vocational expert's testimony" concerning "time off task." Pl.'s Mem. 24. According to Marazzo, she needs more than the "10% time off task" that the identified jobs (routing clerk and photocopy machine operator) would permit. *Id.*; Tr. 1532-34, 1538. She does not, however, identify whether her physical or mental impairments require that accommodation. *See id.* Neither basis is persuasive.

***Time Off-task for Physical RFC.*** The ALJ concluded that Marazzo's reported daily activities — as well as the "moderate" back and shoulder pain Dr. Perez and Dr. Stiler diagnosed — did not entitle her to additional time off-task. Tr. 1531-32. Moderate pain is "not incompatible" with "sustained work activities," *Koch v. Colvin*, No. 12-CV-238, 2013 WL 3244789, at *2 (W.D.N.Y. June 26, 2013), *aff'd*, 570 F. App'x 99 (2d Cir. 2014), and "normal work breaks" typically suffice. *Wagner v. Saul*, No. 18-CV-195, 2019 WL 3955421, at *2 (W.D.N.Y. Aug. 22, 2019). Marazzo has identified no medical evidence that demonstrates that "normal work breaks would [not adequately] accommodate her need for time off" here. Tr. 1532-33; *see Zidanich v. Colvin*, No. 16-CV-87, 2016 WL 6275233, at *2 (W.D.N.Y. Oct. 27, 2016). And Marazzo bears the burden to show

she is entitled to a more restrictive RFC. *Smith*, 740 F. App'x at 726. The ALJ therefore permissibly declined to grant a time off-task accommodation.

***Time Off-task for Mental RFC.*** For similar reasons, the ALJ was not required to grant additional time off-task for plaintiff's mental impairments. Although impairments in the ability to concentrate may support a time off-task accommodation, moderate limitations in concentration do not mandate it. *See Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023). Here, the ALJ properly concluded that Marazzo's "moderate" limitations in her ability to concentrate did not support that accommodation. Section III.A.2.a; *see Heather Ann H. v. Comm'r of Soc. Sec.*, No. 25-CV-00246, 2026 WL 587681, at *7 (N.D.N.Y. Mar. 3, 2026). In reaching that conclusion, the ALJ cited medical findings that Marazzo's medications helped her to focus — further substantial evidence that she had the mental RFC to perform unskilled work without additional breaks. Tr. 1533-34; *see Martinez Reyes*, 2019 WL 3369255, at *5. And Marazzo has pointed to no medical evidence that would entitle her to such an accommodation, as is her burden. *Smith*, 740 F. App'x at 726.

## IV. Conclusion

For the foregoing reasons, Marazzo's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted. Marazzo's complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 29, 2026
Brooklyn, New York